UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
P&L DEVELOPMENT, LLC,

                           Plaintiff,                   **MEMORANDUM**
     -against-                                  **AND OPINION**
                                                     CV 21-5382 (MKB) (AYS)
GERBER PRODUCTS COMPANY,
NESTLE S.A., PERRIGO COMPANY PLC, L.
PERRIGO COMPANY and PBM
NUTRITIONALS, LLC,

                           Defendants.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       This is an action commenced by Plaintiff, P&L Development, LLC ("Plaintiff" or "PLD"), against Defendants, Gerber Products Company ("Gerber"), Nestle S.A. ("Nestle"), Perrigo Company PLC, ("Perrigo P"), L. Perrigo Company ("Perrigo"), and PBM Nutritionals, LLC ("PBM") (collectively "Defendants"). (Compl., Docket Entry ("DE") [1].) Plaintiff is in the business of marketing "store brand" products, i.e., those sold generically under store name brands managed by major retailers such as CVS, Target and Walgreens. The store brand products marketed by Plaintiff compete with products marketed under name brands. Thus, for example, Plaintiff might manufacture, package and distribute the pain reliever ibuprofen bearing a CVS label in competition with ibuprofen products marketed under the brand name "Advil." (Compl. ¶ 24.)

       Plaintiff does not presently manufacture or market infant formula under any store brand name. This litigation arises out of Plaintiff's desire to enter and compete in that market. Presently at issue is this Court's prior Order allowing Plaintiff and Gerber to seal portions of the Complaint from the public docket on the ground that disclosure of such information is barred by the parties'

1

agreement and would harm their business interests. Before turning to the sealing issue, the Court briefly discusses the factual allegations of the Complaint and the claims alleged.

I.   The Complaint

The facts recited herein are drawn from the Complaint. Plaintiff PLD sought to compete in the market for infant formula by entering into a manufacturing and supply agreement with Defendant Gerber, a company engaged in the business of manufacturing, inter alia, infant formula. Plaintiff's complaint refers to a memorandum of understanding between Plaintiff and Gerber (the "MOU"). The MOU is attached as an exhibit to the Complaint. Plaintiff alleges that Gerber breached the MOU. PLD further alleges that Defendants engaged in anti-competitive conduct that led to the breach, and that Defendants monopolized and conspired to monopolize the asserted relevant market. Plaintiff alleges three federal and five state law causes of action as follows:

Section 1 of the Sherman Act (15 U.S.C. § 1) (against all Defendants) for unreasonable restraint of trade (Count 1);

Section 2 of the Sherman Act (15 U.S.C. § 2) (against Perrigo P, Perrigo and PBM) for unlawful maintenance of a monopoly (Count 2);

Section 2 of the Sherman Act (15 U.S.C. § 2) (against all Defendants) for conspiracy to monopolize (Count 3);

Section 340 of the New York State General Business Law (against Perrigo P, Perrigo and PBM) for unlawful maintenance of a monopoly (Count 4);

Section 340 of the New York State General Business Law (against all Defendants) for unreasonable restraint of trade (Count 5);

Section 340 of the New York State General Business Law (against all Defendants) for conspiracy to monopolize (Count 6);

Breach of contract (against Gerber) (Count 7); and

Tortious interference with contract (against Nestle, Perrigo P, Perrigo and PBM) (Count 8).

II.     Prior Proceedings as to Sealing

Plaintiff commenced this case by filing the Complaint completely under seal. (DE [1].) It thereafter moved to file a minimally redacted version of the Complaint. (DE [5].) Specifically, Plaintiff's motion sought only to redact a specific price term from the public docket. That price term consists of three words in paragraph 53 of the Complaint. In support of its claim for redaction, Plaintiff submitted an affidavit explaining the confidential nature of the business information it sought to redact. Gerber, which had a copy of the Complaint, agreed to the redaction of price information but also sought to maintain additional information in the Complaint under seal. (DE [7].) Plaintiff disagreed with all of Gerber's proposed redactions. (DE [6].) Plaintiff did note, however, that it would be seeking entry of a protective order during discovery. (DE [5-1] at n.2.) It was not, however, willing to agree to Gerber's redactions prior to negotiation and entry of such an order and, in any event, would not agree to broad redaction of a document on the public docket.

This Court agreed to allow both of the parties' redactions at this point in the litigation. Plaintiff objected to this Court's decision, and the District Court sustained the objection to the extent that this Court was directed to set forth the standard applied to the sealing decision. That standard, and this Court's decision upon a <u>sua sponte</u> reconsideration of the sealing motions follows.

DISCUSSION

I.     Legal Standard for Sealing

"The public and the press have a 'qualified First Amendment right to . . . access certain judicial documents.'" Toolasprashad v. Toolasprashad, 21-CV-4672, 2021 WL 4949121, at *2 (E.D.N.Y. Oct. 25, 2021) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)) (additional citations omitted). Such judicial documents include complaints, In re Google Digital Advertising Antitrust Litig., Nos. 21-md-3010, 21-cv-6841, 2021 WL 4848758, at * 1 (S.D.N.Y. Oct. 15, 2021), as well as other filings that are "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119.

While there is a presumptive right of public access to judicial documents, that right is "not absolute." Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978)). Thus, even judicial documents may be kept under seal if "higher values . . . so demand." Lugosch, 435 F.3d at 124. Such values may, in appropriate cases, include business interests. See, e.g., GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (allowing sealing of documents "contain[ing] highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"); In re Zyprexa Injunction, 474 F. Supp. 2d 385, 424-25 (E.D.N.Y. 2007) (allowing for sealing of "confidential proprietary material and trade secrets" that pose "a significant risk of harm to . . . a pharmaceutical company operating in a competitive marketplace."); Playtex Prods., LLC v. Munchkin, Inc., No. 14-cv-1308, 2016 WL 1276450, at *11-12 (S.D.N.Y. Mar. 29, 2016) (granting request to redact portions of summary judgment brief which referenced "confidential and sensitive business information, including sales and costs

4

information, presentations, merger discussions, and competitive analyses and product testing"); Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (allowing for sealing of information that "may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); see also Fed. R. Civ. P. 26(c)(1)(G) (permitting issuance of a protective order, for good cause, to prevent disclosure of "a trade secret or other confidential research, development, or commercial information"). In such cases, while there might be no basis to keep judicial documents under seal in their entirety, there may be a basis to redact limited information. See In re General Motors LLC Ignition Switch Litig., Nos. 14-MD-2543, 20-CV-3732, 2021 WL 5331709, * 3 (S.D.N.Y. Nov. 16, 2021).

An order restricting public access to judicial documents must be based upon specific, on-the-record findings that sealing is necessary to preserve the asserted interest. Additionally, any order to seal must be "narrowly tailored to achieve that aim." Brown v. Maxwell, 929 F.3d 41, 47 (2d Cir. 2019) (quoting Lugosch, 435 F.3d at 124). Findings as to sealing are determined by engaging in a three-step analysis. "First, the court determines whether the filing is a 'judicial document;' second, it determines the weight of the presumption of access afforded to the document; and third, the court must identify and weigh factors 'that legitimately counsel' against public access." Google, 2021 WL 4848758 at *1 (quoting Mirlis, 952 F.3d at 59); see also Allegra v. Luxottica Retail N. Am., No. 17-CV-05216, 2021 WL 4799032, *2 (E.D.N.Y. Oct. 14, 2021). Ultimately, sealing or redaction is warranted only if the privacy interests of the party resisting disclosure outweigh the presumption of access.

## II. Disposition of the Sealing Motions

### A. Scope of the Present Decision

The Court takes this opportunity to revisit its decision to allow all redactions. This decision is informed not only by the standards above, but by the fact that Defendants have, in one way or another, indicated their intent to move to dismiss – either for lack of personal jurisdiction or for failure to state a claim upon which relief can be granted. That such motions will soon be pending must be taken into account when considering whether to seal any portion of the public docket.

### B. The Parties' Positions

No party seeks redaction of the entire Complaint. Indeed, the sealing issues arise only between Plaintiff and Defendant Gerber – which have been unable to agree to a uniform set of redactions. While Plaintiff proposes a very limited redaction of factual information, the redactions proposed by Gerber are more significant. Specifically, PLD argues that the only information that should be sealed as outweighing the presumption of public access is the price information contained in three words in paragraph 53 of the Complaint, and corresponding information in the MOU. While Gerber agrees as to the redaction of price information, it also argues that the entire MOU, as well all information flowing therefrom, must be sealed. Gerber relies on the fact that the MOU contains a confidentiality provision, and the argument that the selected paragraphs constitute "highly confidential and sensitive business information relating to Gerber's business." (DE [7] at 1.) It argues therefore that the potential business harm associated with disclosure outweighs the public right of access.

C. <u>Rulings</u>

There is no question but that the Complaint is a judicial document entitled to a strong presumption of access. Indeed, a "complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." <u>Bernstein v. Bernstein Litowitz Berger & Grossmann LLP</u>, 814 F.3d 132, 140 (2d Cir. 2016) (quotation marks and citation omitted). The strength of the presumption of public access is strong where, as here, the document at issue is a complaint which must be unsealed for the public to even begin to understand the dispute and "the judiciary's exercise of its powers under Article III." <u>Allegra</u>, 2021 WL 4799032, at *2. Moreover, the necessity of public understanding is present "even in private business disputes." <u>Alcon Vision, LLC v. Lens.com</u>, No. 18-CV-0407, 2020 WL 3791865, at *4 (E.D.N.Y. July 7, 2020).

Accordingly, the Court finds that the first two prongs of the <u>Lugosh</u> balancing test weigh heavily in favor of public access. With respect to the third prong of the analysis, there is no question but that the Court has the power to seal portions of judicial documents that constitute trade secret information. Before shielding a document from the public docket however, the Court must find, particularly, that the claimed interest in sealing is outweighed by the public's right to access. The party seeking sealing bears the burden of showing that the confidential business interests of its client outweigh the public's right to understand the allegations in this lawsuit, as well as the reason why the Court takes any action herein. <u>Sylvania v. Ledvance</u>, 20-CV-9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021); <u>Alcon</u>, 2020 WL 3791865, at *6.

          1.      <u>The Parties' Agreed Redactions: Price Information</u>

          The parties agree to redaction of price information. Nonetheless, this Court must decide whether sealing of this information outweighs the public right of access. Plaintiff supports the request to seal price information with the declaration of Tom Cotter ("Cotter"), its Executive Vice President of Business Development (the "Cotter Declaration"). Therein, Cotter outlines Plaintiff's efforts to negotiate an agreement with respect to the marketing of infant formula. Cotter states that "[c]ontractual terms like product price are proprietary and closely guarded" and that "it is industry practice to execute a comprehensive confidentiality agreement before negotiating any supply contract." (Cotter Decl., DE [5-3] ¶ 4.) It is further stated that public disclosure of such information "would reveal to [Plaintiff's] competitors key aspects of [Plaintiff's] finances and proprietary business information." (<u>Id.</u> ¶ 5.)

          The limited nature of the pricing information sought to be sealed (which amounts to three words in paragraph 53 of the Complaint and similarly limited language in the MOU), along with the sensitive competitive nature thereof, leads the Court to conclude that sealing of price information is appropriate. While the right of access to information contained in a complaint is strong, the Cotter Declaration makes clear the sensitive nature of the financial information sought to be redacted, and the Court can well envision how disclosure would harm the business interests of the parties. On the other hand, public disclosure of this limited information would do little (certainly at this point in the proceedings) to enlighten the public about the nature of this case. Additionally, it is unlikely that such particular information will be necessary to understand the rulings with respect to any motions to dismiss. Under these circumstances, sealing of pricing information is granted. Accordingly, the three designated words in paragraph 53 of the

8

Complaint, as well as the corresponding information appearing on page 3 of the MOU shall remain under seal.

2. <u>Gerber's Requested Sealing: The MOU and Facts in the Complaint</u>

Gerber's broad requests to seal are supported by the affidavit of Kevin L. Goldberg, its Vice President and General Counsel (the "Goldberg Affidavit"). (DE [8].) The Goldberg Affidavit states that Gerber provided its proposed redactions to PLD and that PLD rejected Gerber's proposals. (Goldberg Aff. ¶ 7.) It also attaches a copy of the Complaint which is highlighted to show Gerber's proposed redactions.

Goldberg states that "[t]hrough the course of several conversations" with Plaintiff's General Counsel and Chief Administrative Officer, he shared "extremely sensitive and confidential information relating to the parties' negotiations of the MOU and certain factors relating to those negotiations." (<u>Id.</u> ¶ 8.) "But for" these confidential conversations, Gerber does not believe "there was any way in which . . . Plaintiff could learn about those factors and circumstances." (<u>Id.</u>) According to Goldberg, "[r]evealing this confidential information to the public and to Gerber's competitors would injure Gerber's business interests and standing in the marketplace by giving Gerber's competitors access to information they would not otherwise have." (<u>Id.</u> ¶ 9.)

The Court's rulings with respect to the propriety of sealing the MOU as well as the material highlighted in the Goldberg Affidavit follow.

9

      i.      <u>The MOU's Confidentiality Clause Is Not Dispositive</u>

The MOU is an agreement reached between Plaintiff and Gerber. It preceded and envisioned a supply contract.[1] Gerber seeks to maintain the entire MOU, and all information flowing therefrom, under seal. Gerber relies on the fact that the MOU contains a confidentiality clause. Since this provision of the MOU is critical to this Court's present decision, the Court herein discloses that provision. It states that the parties to the MOU: "agree to keep all information, in any form, relating to [the MOU], the Products and the negotiations contemplated by the MOU strictly confidential and not disclose any Confidential Information without the prior written consent of the other party." (Compl., Ex. 1.)

The Court has reviewed the remainder of the MOU. With the exception of the price information that appears on page 3, the Court declines to continue to order that the MOU be sealed. First, the mere fact that the MOU includes a confidentiality provision does not, by itself, require sealing of this document. <u>See, e.g.</u>, <u>Under Seal v. Under Seal</u>, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017); <u>Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mgmt. Co., Inc.</u>, No. 12 Civ. 3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 12, 2012); <u>Wells Fargo Bank, N.A. v. Wales LLC</u>, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014).

Other facts weigh against sealing of the MOU. The Court has reviewed the document and, without making any findings as to the binding nature of the MOU, the Court observes that it contains nothing more than general contractual terms. It does not disclose manufacturing information or particular marketing techniques. Therefore, the Court holds that the MOU does not, on its face, contain sensitive business information. More importantly, the core of Plaintiff's

---

[1] The supply contract is annexed as Exhibit 2 to the Complaint, and no party seeks sealing thereof.

case is that Gerber breached the MOU. Additionally, Plaintiff's antitrust and tortious interference claims arise out of the alleged breach of the MOU. Thus, the terms of the MOU as well as the binding nature of its terms, will be critical to determine the issue of breach. These are strong, and indeed, dispositive factors weighing against sealing of the MOU. Therefore, the Court reconsiders its earlier decision and holds that, with the exception of pricing information, the confidentiality provision in the MOU does not, by itself, outweigh the public interest in disclosure. The Court therefore rejects the argument that the confidentiality provision contained in the MOU requires sealing thereof, as well as sealing of all information flowing therefrom. The only information in the MOU that should remain sealed is the pricing information on page 3. The Court now turns to consider whether other reasons require sealing of the material Gerber seeks to shield from the public docket.

      ii.      <u>Factual Allegations within the Complaint Sought to be Sealed by Gerber</u>

In addition to arguing that the MOU's confidentiality clause requires sealing, Gerber argues that particular allegations in the Complaint must be sealed in order to protect its sensitive business information. Those allegations are highlighted in the attachment to the Goldberg Affidavit. In particular, that affidavit states that Section IV of the Complaint (paragraphs 43-57) should be sealed because it "lays out in detail the negotiations leading up to the MOU and the MOU's terms." (Goldberg Aff. ¶ 7.)  The Goldberg Affidavit further states that Section VI of the Complaint (paragraphs 65-74) also require sealing because they "discuss[] the additional post-MOU negotiations contemplated by the MOU." (<u>Id.</u>) Finally, the affidavit states that "[t]he Complaint also contains additional sensitive business information – gleaned from the parties' negotiations – relating to, among other things, Gerber's pricing, projected profits, and

11

production capacity." (Id.) Goldberg cites to paragraphs 4, 30, 32, 42, 58, 61, and 62 as examples of the foregoing "sensitive" information. (Id.)

The paragraphs that Gerber seeks to seal can be grouped into two broad categories. First, there are the paragraphs that refer to the MOU and its terms. Since the Court has already held that the MOU and all information flowing therefrom should not be sealed in its entirety based upon the confidentiality clause, the request to seal those paragraphs on this ground alone is denied. Further, as discussed below, many of the allegations sought to be sealed are critical to understanding the nature of Plaintiff's claims of anti-competitive conduct. Such facts are alleged in support of the elements of Plaintiff's claims, including pleading of a relevant market, the ability of new competitors to enter that market and conspiracy. Since these allegations detail claims regarding the conduct of defendants other than Gerber, they must also be considered in any discussion of the upcoming motions to dismiss based upon lack of personal jurisdiction.

Factual material sought to be sealed also includes allegations forming the basis of Plaintiff's state law breach of contract and tortious interference with contract claims. There is simply no understanding of Plaintiff's claims without reference to these factual allegations. Like facts alleging anti-competitive conduct, reference to these allegations will be important for the District Court to consider in connection with the upcoming motions to dismiss for lack of jurisdiction and/or failure to state a claim upon which relief can be granted.

With the aforementioned in mind, the Court's particularized holdings follow:

### Paragraphs 3; 4; 44; 45; 46; 47; 51-52; 55-57; 149

Gerber's request to seal these paragraphs is denied. The facts in these paragraphs refer, in general terms, to the MOU. They are critical to understanding the nature of the Complaint and any claim for damages. They will play a role in the District Court's ability to rule on any motion

to dismiss. They will likewise be important to the public's ability to understand any decisions reached in this matter. None of these paragraphs reveal particular business information. On balance, the interests of public disclosure outweigh any private business interests identified.

### Paragraphs 7-9; 32; 36; 48; 49; 51; 52; 58; 68; 72-73; 87; 93-94; 117; 145; 159[2]

Gerber's request to seal these paragraphs is denied. The factual allegations in these paragraphs are critical to understanding Plaintiff's claims of anti-competitive conduct among Defendants. They are also important to any upcoming decision on motions to dismiss based upon either lack of jurisdiction or failure to state a claim. They will likewise be important to the public's ability to understand any decisions reached in this matter. While Defendants no doubt deny the facts asserted, they do not reveal particular business information. On balance, the interests of public disclosure outweigh any private business interest identified.

### Paragraphs 62-65; 67-74; 134; 145; 159

Gerber's request to seal these paragraphs is denied. The facts in these paragraphs refer, in general terms, to the MOU and Gerber's alleged breach of contract. They are critical to understanding the nature of the Complaint and will play a role in the District Court's ability to rule on any motion to dismiss. They will likewise be important to the public's ability to understand any decisions reached in this matter. While Defendants no doubt deny the facts asserted, they do not reveal particular business information. On balance, the interests of public disclosure outweigh any private interest identified.

---

[2] Certain paragraphs are referred to in more than one section to reflect more than one reason for refusing redactions. For example, certain material is not redacted because it is necessary to understand PLD's antitrust allegations as well as its breach of contract allegations.

**<u>Material To Be Sealed:<sup>3</sup></u>**
**<u>Paragraph 30;</u>**
**<u>All but the first sentence of paragraph 42;</u>**
**<u>The seven words following the word "Gerber" in line 2 of paragraph 54 (until the words "for resale");</u>**
**<u>The thirteen words following the word "Nestle" in line 2 of paragraph 61;</u>**
**<u>The last sentence of paragraph 61; and</u>**
**<u>The five words following the word "Agreement" in line 6 of paragraph 74</u>**

Gerber's motion to seal the information in these paragraphs is granted. These allegations refer to Gerber's alleged reason for seeking to partner with Plaintiff. They contain specific manufacturing information which, if disclosed to competitors, could injure Gerber's competitive position. At this juncture, this information is not critical to either understanding the Complaint or to the upcoming motions to dismiss. On balance, Gerber's business interests in preserving the confidentiality of this particular limited information outweigh the public's interest in disclosure.

The Court notes that this limited sealing is without prejudice to any later renewed request to unseal this information as may become necessary as this case is litigated.

CONCLUSION

For the foregoing reasons, the Court sets forth the standards applied to the present motion to seal and <u>sua sponte</u> revisits its earlier decision as set forth above. To summarize, the Court grants the request to seal pricing information. Gerber's request to seal additional information is granted only to the extent that the Court grants the request to seal Paragraph 30, all but the first sentence of paragraph 42, the seven words following the word "Gerber" in line 2 of paragraph 54, the thirteen words following the word "Nestle" in line 2 of paragraph 61, the last sentence of

---

<sup>3</sup>   The Court makes minimal redactions with respect to certain sentences to protect confidential information while also allowing a reader to understand the allegations in the Complaint.

paragraph 61, and the five words following the word "Agreement" in line 6 of paragraph 74. The motion to seal is otherwise denied.

In accord with its rulings, The Court directs that Plaintiff file a Complaint redacting only the limited information set forth in this Order. That Complaint will be the presently operative Complaint herein and will relate, in date, back to the original filing. The Court also directs the parties to collaborate and determine whether any other filings in this matter (which remain under seal at this time) contain information sealed by this Order. Counsel are directed to submit a joint letter to this Court identifying any such material. In the event that no sealed material is contained in previous filings, the Court will simply direct the Clerk of the Court to unseal the docket (with the exception of a newly filed Complaint) in its entirety. In the event that sealed information is contained in such documents, counsel shall submit properly and minimally redacted documents to appear on the public docket.

Counsel's compliance with this Order is stayed pending either a decision on any appeal to the District Court, or expiration of the time in which to appeal.

**SO ORDERED.**

Dated: Central Islip, New York
        January 10, 2022

                                                                  /s/ Anne Y. Shields
                                                                 ANNE Y. SHIELDS
                                                                  United States Magistrate Judge