UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
P&L DEVELOPMENT, LLC,

                           Plaintiff,                         **MEMORANDUM**
       -against-                                        **AND OPINION**
                                                                  CV 21-5382 (MKB) (AYS)

GERBER PRODUCTS COMPANY,
NESTLE S.A., PERRIGO COMPANY PLC, L.
PERRIGO COMPANY and PBM
NUTRITIONALS, LLC,

                           Defendants.
-------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

       Before the Court is the renewed motion to seal filed by Defendants Perrigo Company, PLC, L. Perrigo Company, and PBM Nutritionals, LLC (collectively, the "Perrigo Defendants"), seeking to seal certain portions of the Gerber-Perrigo Supply Agreement (the "Supply Agreement") that was submitted to the District Court as an exhibit in support of their motion to dismiss Plaintiff, P & L Development, LLC's ("Plaintiff") Complaint. The original motion to seal was filed with the District Court on March 2, 2022, in conjunction with the Perrigo Defendants' motion to dismiss. (Docket Entry ("DE") [52].) The issue of sealing being a non-dispositive matter automatically referred to this Court, a telephone conference with respect to the sealing motion was held before this Court on March 14, 2022. During that conference, this Court directed the Perrigo Defendants to renew their motion to seal on or before April 4, 2022, specifying every item sought to be sealed and providing an explanation for why the material should be sealed.

       The Perrigo Defendants renewed their motion on April 4, 2022. (DE [87].) Plaintiff filed opposition to the motion on April 15, 2022, and a reply was submitted by the Perrigo Defendants on April 20, 2022. Having reviewed the parties' motion papers, and their arguments in support of

1

and in opposition to sealing, the Court holds that the Perrigo Defendants' motion to seal is granted in part and denied in part.

BACKGROUND

Familiarity with the facts of this action is presumed and, as such, the facts will not be repeated herein. On January 10, 2022, this Court granted in part and denied in part Defendant Gerber Products Company's ("Gerber") motion to seal portions of the Complaint and the memorandum of understanding between Plaintiff and Gerber ("MOU"), attached to the Complaint as an exhibit. In determining the motion, the Court ordered only small portions of the Complaint and the MOU to be sealed, limiting such sealing to those statements in the documents that pertain to pricing information and specific manufacturing information that, if disclosed to competitors, could injure Gerber's competitive position. (DE [37].)

The Perrigo Defendants now seek to seal significant portions of the Supply Agreement, which was submitted to the District Court as an exhibit in support of their motion to dismiss Plaintiff's Complaint.[1] In support of their motion, the Perrigo Defendants offer the declarations of their counsel, J. Clayton Everett, Jr., and Gerber's Vice President and General Counsel, Kenneth L. Goldberg, who both argue that the information sought to be sealed contains "non-public information that could cause competitive harm if made public" and that such information "is not necessary for the public to understand the arguments in support of or in opposition to the Perrigo Defendants' Motion to Dismiss." (Everett, Jr. Decl., DE [87-1], ¶ 3.) The Perrigo Defendants also rely on the fact that the Supply Agreement contains a confidentiality provision in Section 11.11, entitled "No Public Disclosure." (Goldberg Decl., DE [88], ¶ 4.)

---

[1] The Perrigo Defendants' renewed motion states that they are no longer seeking to seal any information contained in their memoranda of law submitted in support of their motion to dismiss, as previously requested in their original motion to seal.

2

While Plaintiff agrees that some of the information sought to be sealed by the Perrigo Defendants is highly confidential and should be shielded from public disclosure, it argues that many of the sealing requests made by the Perrigo Defendants are overbroad and do not qualify for sealing under the test adopted by the Second Circuit. For the reasons discussed below, the Court largely agrees with Plaintiff.

## DISCUSSION

I.  Legal Standard for Sealing

"The public and the press have a 'qualified First Amendment right to . . . access certain judicial documents.'" Toolasprashad v. Toolasprashad, 21-CV-4672, 2021 WL 4949121, at *2 (E.D.N.Y. Oct. 25, 2021) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)) (additional citations omitted). Such judicial documents include complaints, see In re Google Digital Advertising Antitrust Litig., Nos. 21-md-3010, 21-cv-6841, 2021 WL 4848758, at * 1 (S.D.N.Y. Oct. 15, 2021), as well as other filings that are "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119.

While there is a presumptive right of public access to judicial documents, that right is "not absolute." Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978)). Thus, even judicial documents may be kept under seal if "higher values . . . so demand." Lugosch, 435 F.3d at 124. Such values may, in appropriate cases, include business interests. See, e.g., GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (allowing sealing of documents "contain[ing] highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"); In re Zyprexa Injunction, 474 F. Supp. 2d 385, 424-25 (E.D.N.Y. 2007) (allowing for sealing of "confidential proprietary material and trade secrets"

that pose "a significant risk of harm to . . . a pharmaceutical company operating in a competitive marketplace."); Playtex Prods., LLC v. Munchkin, Inc., No. 14-cv-1308, 2016 WL 1276450, at *11-12 (S.D.N.Y. Mar. 29, 2016) (granting request to redact portions of summary judgment brief which referenced "confidential and sensitive business information, including sales and costs information, presentations, merger discussions, and competitive analyses and product testing"); Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (allowing for sealing of information that "may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); see also Fed. R. Civ. P. 26(c)(1)(G) (permitting issuance of a protective order, for good cause, to prevent disclosure of "a trade secret or other confidential research, development, or commercial information"). In such cases, while there might be no basis to keep judicial documents under seal in their entirety, there may be a basis to redact limited information. See In re General Motors LLC Ignition Switch Litig., Nos. 14-MD-2543, 20-CV-3732, 2021 WL 5331709, * 3 (S.D.N.Y. Nov. 16, 2021).

An order restricting public access to judicial documents must be based upon specific, on-the-record findings that sealing is necessary to preserve the asserted interest. Additionally, any order to seal must be "narrowly tailored to achieve that aim." Brown v. Maxwell, 929 F.3d 41, 47 (2d Cir. 2019) (quoting Lugosch, 435 F.3d at 124). Findings as to sealing are determined by engaging in a three-step analysis. "First, the court determines whether the filing is a 'judicial document;' second, it determines the weight of the presumption of access afforded to the document; and third, the court must identify and weigh factors 'that legitimately counsel' against public access." Google, 2021 WL 4848758 at *1 (quoting Mirlis, 952 F.3d at 59); see also Allegra v. Luxottica Retail N. Am., No. 17-CV-05216, 2021 WL 4799032, *2 (E.D.N.Y. Oct.

4

14, 2021). Ultimately, sealing or redaction is warranted only if the privacy interests of the party resisting disclosure outweigh the presumption of access.

II.     Disposition of the Motion

There is no question – nor do the parties dispute – that the information the Perrigo Defendants seek to seal is contained within a "judicial document" in that the Supply Agreement was filed as an exhibit in support of their motion to dismiss. See Bredehorn v. Young, No. CV 19-1010, 2020 WL 2042391, at *2 (E.D.N.Y. Apr. 28, 2020) ("Documents filed as exhibits to motions or as attachments to letters filed with the Court seeking some type of judicial action are, in fact, 'judicial documents.'") (citing Bernstein v. Bernstein Litowitz Berger & Grossman LLP, No. 14-CV-6867, 2016 WL 1071107, at *5 (S.D.N.Y. Mar. 18, 2016), aff'd, 814 F.3d 132 (2d Cir. 2016)). Accordingly, it is entitled to a strong presumption of access. See Lugosch, 435 F.3d at 121 ("Our precedents indicate that documents submitted to a court for its consideration in a . . . motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendement."). Moreover, the necessity of public understanding is present "even in private business disputes." Alcon Vision, LLC v. Lens.com, No. 18-CV-0407, 2020 WL 3791865, at *4 (E.D.N.Y. July 7, 2020).

Accordingly, the Court finds that the first two prongs of the Lugosh balancing test weigh heavily in favor of public access. With respect to the third prong of the analysis, there is no question but that the Court has the power to seal portions of judicial documents that constitute highly competitive business information. Before shielding a document from the public docket however, the Court must find, particularly, that the claimed interest in sealing is outweighed by the public's right to access. The party seeking sealing bears the burden of showing that the confidential business interests of its client outweigh the public's right to understand the

5

allegations in this lawsuit, as well as the reason why the Court takes any action herein. See Sylvania v. Ledvance, 20-CV-9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021); Alcon, 2020 WL 3791865, at *6.

    A.    The Parties' Agreed Redaction: Schedule 2 to the Supply Agreement

The parties agree to sealing Schedule 2 to the Supply Agreement, which contains a table entitled "Take-or-Pay Amount," on page 24 of the Supply Agreement. Nonetheless, this Court must decide whether sealing this information outweighs the right of public access. The Perrigo Defendants request to seal the information contained in Schedule 2 on the grounds that it contains pricing information, which, if disclosed, could cause competitive harm to the Perrigo Defendants.

"Pricing information" has been held to "fall within the scope of protected trade secrets." Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc., No. 17 CV 147, 2019 WL 3753780, at *5 (E.D.N.Y. Aug. 8, 2019). The information contained in Schedule 2 is of a highly sensitive competitive nature, which, if disclosed, could certainly harm the Perrigo Defendants' business interests, both currently and in the future, by revealing to competitors minimum purchase commitments and specific pricing terms negotiated between the Perrigo Defendants and Gerber. Moreover, public disclosure of this information would do little to enlighten the public about the nature of this case. Nor is it necessary to understand the motion to dismiss pending before the District Court, or any rulings rendered in connection therewith. Accordingly, this Court finds good cause to seal Schedule 2 to the Supply Agreement in its entirety.

    B.    The Perrigo Defendants' Requested Redactions

As stated above, the Perrigo Defendants base their request for sealing, in part, on the ground that the Supply Agreement contains a confidentiality provision at Section 11.11,

6

entitled "No Public Disclosure," which states that "[n]either Party may make any public statement, announcement or disclosure to Third Parties concerning the existence of this Agreement or its terms, the business relationship between the Parties or the transactions contemplated hereby, without the prior written approval of the other Party except as required by applicable law (including, but not limited to, securities laws)." (Goldberg Decl. ¶ 4.) As this Court previously held in connection with Gerber's prior motion to seal, the mere fact that the Supply Agreement includes a confidentiality provision does not, by itself, require sealing of this document. See, e.g., Under Seal v. Under Seal, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017); Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mgmt. Co., Inc., No. 12 Civ. 3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 12, 2012); Wells Fargo Bank, N.A. v. Wales LLC, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014).

The Court now turns to the specific sections of the Supply Agreement sought to be sealed, which can be broken down into three categories: (1) Pricing information; (2) Design manufacturing, and supply process information; and, (3) Information concerning the scope of the Supply Agreement.

      1.     <u>Pricing Information: Section 4.1 and Schedule 1</u>

The Perrigo Defendants argue that Section 4.1 of the Supply Agreement, as well as Schedule 1 thereto, contain confidential pricing information, including the pricing terms offered to the Perrigo Defendants by Gerber, the specific proprietary formulations covered by the Supply Agreement, and the Perrigo Defendants' minimum annual product volume commitments. (Everett, Jr. Decl. ¶ 4.) Plaintiff agrees that the specific pricing term found in Section 4.1 should be sealed, as well as Table A in Schedule 1.

7

The Court agrees with Plaintiff. Section 4.1 consists of two sentences, with only the second sentence containing arguably sensitive commercial information. The first sentence does nothing more than set out the general obligations agreed to by the Perrigo Defendants and Gerber. (Supply Agreement, annexed to Everett, Jr. Decl. at Ex. A, at 10.) Accordingly, the Court finds that, on balance, the need to maintain confidentiality outweighs the right to public disclosure with respect to only the second sentence of Section 4.1. As such, the Perrigo Defendants' motion to seal is granted with respect to the second sentence of Section 4.1 and denied with respect to the first sentence.

With respect to Schedule 1, the Schedule consists of two tables – Table A, entitled "Products and Formulations," and Table B, entitled "Minimum Annual Product Volumes and Product Prices." (Supply Agreement at 22-23.) There is no question that Table B should be sealed. It contains specific contractual pricing information and the minimum amounts the Perrigo Defendants have contracted to purchase from Gerber. As stated above, such information is considered a trade secret and deserving of confidential treatment. Accordingly, the Perrigo Defendants' motion to seal Table B in Schedule 1 is granted.

Table A, however, contains no real information. In fact, aside from three entries consisting of combined letters and numbers, the rest of the entries in the table are listed as "TBD," as in "to be determined." The Court finds nothing confidential about information that has yet to even be determined. Moreover, the few letters and numbers listed in Table A are not defined in any way and appear to be meaningless to anyone other than the Perrigo Defendants and Gerber. Accordingly, the motion to seal Table A in Schedule 1 is denied.

       2.       <u>Manufacturing, Design and Supply Process Information: Sections 2.3, 2.4, 2.5, 2.7, 2.8, Certain information on Page 16 of the Quality Agreement Annexed to the Supply Agreement, and Schedule 7</u>

The information sought to be sealed as manufacturing, design and supply process information consists of information pertaining to: (1) the timing and manner in which the Perrigo Defendants purchase products from Gerber; (2) specific details concerning Gerber's delivery of products to the Perrigo Defendants; (3) the Perrigo Defendants' purchase commitments to Gerber; (4) the processes Gerber must use to manufacture the Perrigo Defendants' proprietary infant formulas; (5) the allocation of manufacturing costs between Gerber and the Perrigo Defendants; (6) the Perrigo Defendants' specific proprietary formulations covered by the Supply Agreement; and, (7) the specific quality metrics governing Gerber's supply of infant formula to the Perrigo Defendants. (Everett Decl. ¶ 5.) Plaintiff does not oppose sealing certain limited portions of the information the Perrigo Defendants seek to redact, as noted below.

Sections 2.3, 2.7, and 2.8 set forth nothing more than general contractual terms with respect to how often the Perrigo Defendants will purchase products from Gerber, a general statement as to the materials Gerber will use to manufacture the infant formula, and how costs are allocated between the Perrigo Defendants and Gerber. (Supply Agreement at 6-8.) The Court finds no sensitive business information contained therein. Moreover, such information may be important to the District Court in determining the pending motions to dismiss and likewise important to the public's ability to understand any decisions reached in this matter. Accordingly, the motion to seal Sections 2.3, 2.7 and 2.8 of the Supply Agreement is denied.

With respect to Sections 2.4 and 2.5, the Court finds that those provisions contain certain discrete terms deserving of sealing. For the most part, Section 2.4, entitled "Product Delivery

9

Instructions," contains general contractual obligations with respect to how and when Gerber will deliver its product to the Perrigo Defendants. (Supply Agreement at 6.) However, within the section there is a discrete amount set forth at line 21 with respect to how much Gerber is permitted to vary the quantity of the product delivered to the Perrigo Defendants. The Court finds that this discrete amount constitutes sensitive business information that should be shielded from disclosure. The rest of the section, however, does not qualify for such protection and the interests of public disclosure outweigh any private business interest identified. As such, the motion to seal is granted with respect to only the discrete percentage amount contained in line 21 of Section 2.4 and denied with respect to the remainder of the section.

Similarly, Section 2.5 sets forth the parameters concerning the minimum amount of product that the Perrigo Defendants shall purchase from Gerber each contract year, without identifying the actual amount. The section goes on to state that if the Perrigo Defendants fail to purchase the annual minimum volume of product, then they shall pay amounts set forth in Schedule 2, without identifying the exact amounts. Accordingly, there is nothing more than general contractual obligations set forth in Section 2.5, with the exception of a specific amount identified in the last sentence of the section, which the Court finds to be commercially sensitive and, if disclosed, could harm the parties to the Supply Agreement. Accordingly, the motion to seal Section 2.5 is denied except with respect to the fifteen words following the word "Year" in lines 22 and 23 of Section 2.5.

The Perrigo Defendants also seek to seal the table on page 16 of the Quality Agreement that is annexed to the Supply Agreement. While Plaintiff opposes the motion on the grounds that the Perrigo Defendants did not seek to seal this information in the original motion to seal made to the District Court, by permitting the Perrigo Defendants to renew their motion, this Court

10

implicitly permitted them to modify or add items sought to be sealed. Moreover, upon review of the table listed on page 16, the Court finds that it contains commercially sensitive information in that it lists the specific proprietary formulations belonging to the Perrigo Defendants, by both formula number and description, thereby linking the specific products to their formula numbers. On balance, the Perrigo Defendants' business interests outweigh any public interest in the disclosure of this information. Nor is the information necessary to a determination of the pending motions to dismiss or the public's ability to understand such a determination. Accordingly, the motion to seal the table contained on page 16 of the Quality Agreement annexed to the Supply Agreement is granted.

The final item sought to be sealed as manufacturing, design and supply process information is Schedule 7 to the Supply Agreement, which, again, sets forth general contractual obligations on Gerber's part with respect to the quality metrics governing its supply of product to the Perrigo Defendants. (Supply Agreement at 36.) While it is doubtful the District Court will need to interpret this information in rendering its decision on the motions to dismiss, or that the public will need this information to understand any such decision, there is also simply nothing confidential or commercially sensitive about the general information contained in Schedule 7. Accordingly, the motion to seal Schedule 7 to the Supply Agreement is denied.

3. <u>Information Concerning the Scope of the Supply Agreement: Sections 2.2. and 10.1</u>

The Perrigo Defendants seek to seal the information contained in Sections 2.2 and 10.1 on the ground that they relate to the scope of the relationship between Gerber and the Perrigo Defendants, including their respective rights under the Supply Agreement to purchase or sell infant formula products. (Everett Decl. ¶ 6.) Section 2.2 is an exclusivity provision and Section 10.1 concerns the term of the Supply Agreement. (Supply Agreement at 5,

11

17.) These sections are at the very heart of this litigation wherein Plaintiff is alleging that Gerber engaged in anti-competitive conduct to Plaintiff's detriment and that all defendants monopolized and conspired to monopolize the infant formula market. Accordingly, Sections 2.2 and 10.1 appear to be crucial to the District Court's determination of the pending motions to dismiss, and likewise integral to the public's understanding of that determination. For these reasons, the Court finds that the public interest in disclosure outweighs the private business interests identified by the Perrigo Defendants. The motion to seal is denied with respect to Sections 2.2 and 10.1 of the Supply Agreement.

## CONCLUSION

For the foregoing reasons, the Perrigo Defendants' motion to seal is granted in part and denied in part. Specifically, the following sections of the Supply Agreement are permitted to be sealed: (1) the discrete percentage amount found at line 21 of Section 2.4; (2) the fifteen words following the word "Year" at lines 22 and 23 of Section 2.5; (3) the second sentence of Section 4.1; (4) Table B in Schedule 1; (5) Schedule 2 in its entirety; and (6) the table contained on page 16 of the Quality Agreement annexed to the Supply Agreement. In all other respects, the motion to seal is denied.

Counsel's compliance with this Order is stayed pending either a decision on any appeal to the District Court, or expiration of the time in which to appeal.

**SO ORDERED.**

Dated: Central Islip, New York
       May 6, 2022

                                                            /s/ Anne Y. Shields
                                                            ANNE Y. SHIELDS
                                                            United States Magistrate Judge