FILED
CLERK
12/2/2024 8:01 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| -------------------------------X | **Docket#** |
| P&L DEVELOPMENT, LLC, : | 21-cv-05382-NG-AYS |
| Plaintiff, : | |
| - versus - : | U.S. Courthouse |
| : | Central Islip, New York |
| GERBER PRODUCTS COMPANY et al.: | |
| : | April 4, 2024 |
| Defendants : | 1:08 p.m. |
| -------------------------------X | |

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiffs:**
**Jonathan L. Lewis, Esq.**
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

**For Defendants:**
**Oral Pottinger, Esq.**
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006

**C. Scott Lent, Esq.**
**Matthew Tabas, Esq.**
Arnold & Porter Kaye Scholer
250 W. 55th Street
New York, NY 10019

**Transcription Service:**
**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE CLERK: Calling 21-cv-5382, *P&L Development, LLC v. Gerber Products Company et al.*

Please state your appearances for the record.

MR. LEWIS: Jonathan Lewis from Lowenstein Sandler on behalf of the plaintiff, P&L Development, LLC. Good morning.

THE COURT: Good afternoon.

MR. LEWIS: Or good afternoon, your Honor. It's great to meet you.

MR. LENT: Good afternoon. Scott Lent from Arnold & Porter on behalf of the Perrigo defendants.

MR. TABAS: Matt Tabas from Arnold & Porter no behalf of the Perrigo defendants.

MR. POTTINGER: Good afternoon, your Honor. Oral Pottinger from Mayer Brown on behalf of Gerber.

THE COURT: Good afternoon to all. It's nice to see everybody. I feel like this case has been going on forever, yet nothing has happened. So I'm hoping things will move along.

I see your schedule and I think it's ample. I think it's thoughtful. You would obviously know what needs to be done better than I do. I plan on so ordering it.

I think there's a conference in there that I don't think is necessary. That's a status conference in

June. I don't think that's going to be necessary so I'm taking that out of the order because as I said, it's time to move it along.

You have given yourselves what looks like a lot of time for documents, but then you've got all of fact discovery in a sort of comparatively short time period after that. It's only a few months on depositions. So I'm assuming that's a thoughtful amount of time or you've got to do depositions, you know, earlier?

MR. LEWIS: Your Honor, Jonathan Lewis. I expect that depositions would occur sooner.

THE COURT: Yes.

MR. LEWIS: I don't think we're necessarily going to be waiting till everything is produced.

THE COURT: Okay.

MR. LEWIS: I expect everybody will produce quickly or in a reasonable time so that there is additional time in the schedule. But I will certainly welcome the thoughts of my colleagues.

THE COURT: Yes, what you all think about that?

MR. LENT: Scott Lent from Arnold & Porter, your Honor. I think depositions would most likely start in the tier 2 phase.

THE COURT: Okay.

MR. LENT: But I do agree with plaintiff's

counsel that we don't need all the documents to be produced in order for the depositions to start.

THE COURT: Okay, good. So that was the only thing that concerned me. And if there's a situation where -- what I don't want to see is we can't take a deposition because we're waiting for one or two documents. I am always about you know what, take your deposition. If down the road another document pops up, I'm happy to say okay, bring the witness back for a limited amount of time. But I don't like putting things off until every last shred of documents are produced and then take depositions. So that was my only concern.

But it sounds like you can work together to get things moving. I think these are generous deadlines. I do recognize that even though the case is an older case and not a lot has happened, it's not necessarily anybody's fault. We had a motion to dismiss and then things sort of start up after that. So even though it's a 21 docket, it's really more of, I don't know, as a 22, 23 docket because that's when everything began.

Even though having said that, please do your best to treat it like a 21 case and move it along as quickly as possible. If you need me for anything, anything pops up, I'm here for that. Just let me know by letter. If there's --

THE CLERK: (Inaudible).

THE COURT: Yes. Your first date for -- well, it's Daubert as well.

THE CLERK: Okay. It's just a long time. Usually 30.

THE COURT: Usually we give 30 days after the end of discovery for summary judgment.

THE CLERK: (Inaudible).

THE COURT: Yes. And that's, by the way, you should know that's just taking the first step in the district judge's process, so that's just writing a letter. So maybe we can move that up a little bit. Is that 90 days giving you more than you need, is that thoughtful, do you think -- there are Daubert motions. You know, what are the thoughts on that because that's a long time.

MR. LEWIS: Again, interested in my colleagues' thoughts on this as well, your Honor. It has been my experience in these types of cases that there are likely to be Daubert motions particularly given, you know, these types of cases involve a number of experts.

THE COURT: Yes.

MR. LEWIS: And so I mean I can't necessarily foresee them but it's like --

THE COURT: So again, but we're still talking

about the first step, right? So when I'm talking about making the motion, we're talking about the first step which is usually, and off the top of my head I don't know if this district judge has a pre-motion conference letter. She probably does. And that would be Daubert and summary judgment. So we're just talking about the first step and that's, you know, letting the district court know. Do you think you can do that in less time?

MR. LEWIS: Your Honor, I don't know. We haven't --

THE COURT: And then the briefing you can do on your own. I'm sure the district judge will say brief it however you want to brief it.

MR. LENT: Your Honor, Scott Lent again from Arnold & Porter. I tend to agree with Mr. Lewis that in antitrust cases that there typically is a lot of experts and there is a lot of --

THE COURT: A lot of Daubert. There will be Daubert.

MR. LENT: -- there are a lot of Daubert issues that will pop up. I think the 90 days was thoughtful to account for that. I don't think that perhaps 30 would be enough given --

THE COURT: Okay.

MR. LENT: We just had a conversation. There

might be three or four experts on each side and --

THE COURT: And I'm sure none of them should be able to testify.

MR. LENT: Of course, your Honor. Of course. Well, ours should but not Mr. Lewis's.

THE COURT: Obviously.

MR. LEWIS: I object to that, your Honor.

THE COURT: It's okay. It's not my motion.

MR. LEWIS: I still object.

THE COURT: It's fine with me. You can object.

Look, I'll give you a time. Don't take more.

MR. LENT: Understood.

THE COURT: Because all of these deadlines are very generous. I'm saying it's okay. If you ask for more time, I'm not giving it to you and I'm going to make you ask the district judge for more time.

MR. LENT: Understood, your Honor.

MR. LEWIS: Understood, your Honor.

THE COURT: So you can comply with this. Right?

MR. LENT: Absolutely.

MR. LEWIS: Yes, your Honor.

THE COURT: All right. So do that. If you're considering settlement discussions and you want my help with that, do that before you spend a lot of money. You

can do it before experts. You can do it after experts but before motions. Daubert motions are very expensive. Summary judgment motions are very expensive and time consuming. You don't know what's going to happen. So if you want to talk about settlement with me, I'm here for that. If you want to talk about the mediation program and going to that, if you want to go to private mediation that's obviously up to you. But always, always keep settlement, you know, at the top of your minds. Right?

MR. LEWIS: Thank you, your Honor.

MR. LENT: Thank you.

MR. POTTINGER: Thank you.

THE CLERK: Do you want a joint status letter at all?

THE COURT: No. I mean I might ask for a joint status letter when I look at the -- it may be in between fact and, I'll look at the dates, in between fact and expert discovery. Maybe I'll have a status letter in there, and I'll put that on the docket. But that I'll probably ask you how many experts, you know, what you thought about where the case is going from then on and I'm going to ask you again about settlement. But that will be, I'll pick a date for a joint letter in between fact and expert. That's when I usually put it in.

I won't need to hear from you before then

unless you need me for some reason.

MR. LEWIS: Your Honor, just Jonathan Lewis.

THE COURT: Yes.

MR. LEWIS: It was raised in the joint letter the number of depositions and interrogatories. We spoke and we're hopeful that we'll be able to reach some accommodation. So I wanted to at least inform you of that since it is mentioned in our letter.

THE COURT: Okay. So depositions are always better than interrogatories. I'll just say that. Okay? Now you know how I'm going to rule on that. Always better.

MR. LEWIS: Thank you, your Honor.

THE COURT: Okay, good. Anything on the defense side?

MR. LENT: No, your Honor. Your Honor, Mr. Tabas and I were just hired recently by Perrigo and we just want to acknowledge that we owe the Court some redactions and we will be almost certainly going to be filing those redactions next week.

THE COURT: Oh, I look forward to that.

MR. LENT: Thank you.

MR. LEWIS: One last thing, your Honor. I do want to note just for your benefit, the Court's benefit, we have been working very cooperatively together. I

don't perceive any issues down the road as evident by the fact that we got the protective order and ESI protocol on filing which you entered, so thank you, your Honor.

THE COURT: Yes, absolutely.

MR. LENT: Agreed. Thank you, your Honor.

THE COURT: Okay. Good. All right. Thanks for coming in.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **27th** day of **November**, 2024.

Mary Greco

Transcriptions Plus II, Inc.