UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

P & L DEVELOPMENT, LLC,

                            **Plaintiff,**

                **-against-**

GERBER PRODUCTS COMPANY,
PERRIGO COMPANY PLC, L. PERRIGO
COMPANY AND PBM NUTRITIONALS,
LLC,

                         **Defendants.**

-------------------------------------------------------- x

**OPINION & ORDER**

**21-cv-5382 (NG) (AYS)**

**GERSHON, United States District Judge:**

Before the court is an appeal seeking modification of a magistrate judge's discovery order which upheld claims of attorney-client privilege asserted by Gerber Products Company ("Gerber"). In this antitrust action, plaintiff P & L Development ("PLD") alleges defendants Gerber and Perrigo Company PLC, L. Perrigo Company, and PBM Nutritionals, LLC (collectively, "Perrigo") entered into an Anticompetitive Agreement which gave Perrigo a first right to Gerber's excess capacity of infant formula, allowing Perrigo to block competitors from entering the market for the sale of store-brand infant formula to retailers. *See P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435 (E.D.N.Y. 2024). For the reasons set forth below, PLD's appeal is denied.

## I.    Rule 72(a) Standard of Review

Pursuant to Federal Rule of Civil Procedure 72(a), "for non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown that the order is 'clearly erroneous or contrary to law.'" *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (quoting Rule 72(a)). "A decision is 'clearly

erroneous' when the reviewing Court is left with the definite and firm conviction that a mistake has been committed." *Smith v. City of New York*, 754 F. Supp. 3d 581, 583 (S.D.N.Y. 2024). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Marin v. Apple-Metro, Inc.*, 2014 WL 7271591, at *1 (E.D.N.Y. Dec. 18, 2014) (cleaned up). Pursuant to these standards, "a magistrate judge's orders on discovery matters are entitled to substantial deference." *MacNamara v. City of New York*, 2008 WL 186181, at *2 (S.D.N.Y. Jan. 18, 2008).

## II.    Discussion

### A.  Joint Client Privilege

The facts underlying the challenged privilege ruling are not in dispute, although the inferences to be drawn from those facts are not agreed upon. Gerber is a direct, wholly-owned subsidiary of Nestle Nutrition North America, which in turn is an indirect subsidiary of the ultimate parent company, Nestle S.A. ECF No. 64-2 (Decl. of Kevin Goldberg in Support of Nestle S.A.'s Motion to Dismiss) ¶ 2. PLD seeks to compel production of documents and communications shared between Gerber's former general counsel, Kevin Goldberg, and two non-Gerber employees, Ricardo Cancian and Alexandre Costa, who were employed by other Nestle entities.

Mr. Cancian served as the Senior Director of Business Transformation Americas for Nestle Regional Globe Office North America ("Globe"), which shares a corporate great-great-grandparent with Gerber. ECF No. 211 (December 30, 2025 PLD and Gerber Joint Letter) ("Jt. Ltr.") at 3, 13. He was assigned by his employer to supervise Gerber's project of dealing with excess infant formula production. *Id.* at 14.

Mr. Costa served as the Head of Nestle Infant Nutrition Zone Americas for Nestle Enterprises S.A. ("Enterprises"), Gerber's corporate grandaunt. *Id.* at 3. Gerber's CEO at the time, Tarun Malkani, reported to Mr. Costa, who had oversight over Gerber's operations. *Id.*

PLD contends that Mr. Cancian and Mr. Costa are third parties and that Gerber therefore cannot claim privilege over communications between them and Gerber's in-house counsel, Mr. Goldberg, who testified that he represented only Gerber and not Globe or Enterprises. Goldberg Dep. Tr. at 46:13-19, 50:1-22. Gerber responds that Mr. Cancian and Mr. Costa were jointly represented by Mr. Goldberg on a matter of common interest.

Judge Shields' determination upholding the privilege was not clearly erroneous or contrary to law. As an initial matter, I reject PLD's argument that Gerber marking the contested communications as "attorney-client privileged" rather than "common interest privileged" in its privilege log waived Gerber's right to assert privilege. PLD points to no authority mandating this degree of specificity in a party's privilege log. Moreover, PLD's argument is based on the incorrect assumption that a "common interest" privilege is being asserted. As explained in *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007), that type of privilege "comes into play when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." The common interest privilege is not at issue here.

Rather, at issue is whether there was a joint representation on a matter of common legal interest. "[E]ven in the parent-subsidiary context a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of common interest." *Id.* at 379. The privilege "is limited by the extent of the legal matter of common interest." *Id.* at 363.

It was not clearly erroneous to find that Globe and Enterprises shared common legal interests with Gerber with respect to the matter at issue here. There is ample evidence in the record to find that Mr. Cancian for Globe and Mr. Costa for Enterprises were represented by and sought legal advice from Mr. Goldberg in connection with matters of interest common to Gerber, Globe and Enterprises. For example, in June of 2020, Mr. Costa appointed Mr. Cancian to lead the Apollo project, which involved onboarding new companies to utilize the excess capacity of infant formula produced by Gerber's Gateway factory. Cancian Dep. Tr. at 26:20-27:9, 29:1-23, 44:17-45:7. Mr. Cancian testified that, while he was leading the Apollo project, he reported to the Gerber CEO, and Mr. Goldberg acted as his attorney. *Id.* at 34:19-35:1, 218:4-7.[1]

To be sure, both Globe's and Enterprises' interests in ensuring the success of Gerber's business were undoubtedly commercial or financial. But "[a] financial interest of a party, no matter how large, does not preclude a court from finding a legal interest shared with another party where the legal aspects materially affect the financial interests." *Schaeffler v. United States*, 806 F.3d 34, 42 (2d Cir. 2015) (finding a shared legal interest in the context of upholding the common interest privilege). Legal issues such as the enforceability of the MOU materially affected the financial interests with which Globe and Enterprises were concerned.

---

[1] To the extent that Gerber argues that Mr. Cancian and Mr. Costa were represented by Mr. Goldberg in their individual capacities, that argument is rejected. Gerber has made no showing that Mr. Cancian or Mr. Costa sought legal advice from Mr. Goldberg on matters outside the scope of their official duties. *See Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49 (S.D.N.Y. 1989) ("Any privilege that exists as to a corporate officer's role and duties within the corporation belongs to the corporation, not the officer."). The reasonable inference to be drawn is that Mr. Cancian and Mr. Costa sought legal advice from Mr. Goldberg on a matter of interest common to Gerber, Globe and Enterprises. Even though Mr. Goldberg viewed Gerber as his sole client, insofar as Globe and Enterprises shared a common legal interest with Gerber, Mr. Goldberg was entitled to communicate with them via Mr. Cancian and Mr. Costa without destroying privilege. *See id.* at 49-50 (holding that communications between a parent company's in-house attorney and an officer of a subsidiary company on matters of interest common to the parent and subsidiary were privileged).

Finally, PLD argues that Gerber's position is inconsistent with its earlier assertion, made during a discovery dispute before Judge Shields, that certain Nestle documents were not within its possession, custody, or control because those Nestle entities were separate from Gerber. This argument is unconvincing. The question here is not whether Gerber and all other Nestle subsidiaries have a complete unity of identity or share possession of certain documents, but whether Globe and Enterprises shared a common legal interest with Gerber such that Mr. Cancian and Mr. Costa's communications with Gerber's counsel on the particular matter of interest are privileged. I conclude that it was not clearly erroneous or contrary to law for Judge Shields to find they did.

### B. Implicit Waiver

PLD argues that Gerber waived privilege by disclosing legal advice about the Memorandum of Understanding ("MOU") between PLD and Gerber in two ways. First, it asserts that Mr. Malkani disclosed a portion of confidential communications at his deposition. When asked whether the MOU was binding on the parties, Mr. Malkani responded that he was told that it was "binding in its intention to pursue the deal further, but ultimately, it would be the supply agreement that was binding." Malkani Dep. Tr. at 392:22-393:7. When asked who had told him this, Mr. Malkani responded, "[m]y counsel," after which Gerber's attorneys objected and instructed him not to answer further questioning. *Id.* at 393:8-25. Second, PLD argues that Gerber's in-house counsel, Mr. Goldberg, wrote two letters to PLD, dated May 20, 2021 and September 22, 2021, in which he "disclosed Gerber's legal conclusion that the MOU was not 'binding on either PLD or Gerber.'" PLD Br. at 10. PLD contends that Mr. Malkani's deposition testimony and Mr. Goldberg's letters "reveal conflicting legal advice and place Gerber's attorney-client relationship with Mr. Goldberg at issue." *Id.*

As will be seen, I disagree with PLD. The attorney-client privilege "may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000). The touchstone of the doctrine is fairness, and "[w]hether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at 183; *see also John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003), *as amended* (Nov. 25, 2003). "The key to a finding of implied waiver" is "some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication[.]" *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (emphasis in original).

Judge Shields' ruling that Mr. Malkani's deposition testimony did not waive privilege over all legal advice given in connection with the MOU is not clearly erroneous or contrary to law. Gerber, through Mr. Malkani, did not place any legal advice received from Goldberg at issue. Rather, after PLD elicited Mr. Malkani's answer that he had received advice from counsel, Gerber's counsel promptly objected and cut off the line of questioning. Malkani Dep. Tr. at 392:22-393:15. Nor does Gerber rely on any legal advice given to Mr. Malkani in support of a claim or defense. Thus, this is not a case where Gerber wields the privilege simultaneously as a sword and a shield. *See Bilzerian*, 926 F.2d at 1292.

I also decline to find that Mr. Goldberg's letters to PLD effectuated a waiver. These letters, sent prior to the commencement of this action, merely set out Gerber's position that the MOU was

not binding and did not disclose the contents of any confidential communications or place them at issue. And PLD cites no authority in support of its argument that this position's purported inconsistency with Mr. Malkani's deposition testimony effectuates a waiver. In any event, I agree with Gerber that there is no inconsistency. Mr. Malkani testified only that the MOU required the parties to negotiate the deal further, which is consistent with Mr. Goldberg's letters. *Compare* Malkani Dep. Tr. at 393:2-7 ("As was explained to me before I signed that document shortly after I joined the company, [the MOU] was binding in its intention to pursue the deal further, but ultimately, it would be the supply agreement that would be binding.") *with* May 20, 2021 Goldberg Letter ("Your belief that the MOU is 'binding' is misplaced. The MOU only sets forth the parties' intention to enter into a supply agreement and nothing more.").

### III.    Conclusion

For the foregoing reasons, PLD's appeal is DENIED and Judge Shields' order is AFFIRMED.

SO ORDERED.

**NINA GERSHON**
**United States District Judge**

July 30, 2026
Brooklyn, New York

-7 -